UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES KENYATTA JR. A.K.A. CHARLIECEE,

Plaintiff,

-against-

DONALD J. TRUMP, in his individual and official capacity as President of the United States; UNITED STATES OF AMERICA; U.S. GENERAL SERVICES ADMINSTRIATION,

Defendants.

1:25-CV-2475 (LLS)

ORDER OF DISMISSAL

LOUIS L. STATON, United States District Judge:

Plaintiff Charles Kenyatta Jr., also known as "Charliecee," is incarcerated in the Sing Sing Correctional Facility.[1] He brings this action *pro se*, asserting claims of violations of the federal constitution under 42 U.S.C. § 1983, claims under Titles VI and VII of the Civil Rights of 1964, and claims under state law. Plaintiff seeks declaratory relief, injunctive relief, and damages. He sues: (1) President Donald J. Trump, in his individual capacity and in his official capacity as President of the United States; (2) the United States of America; and (3) the federal General Services Administration ("GSA"). The Court understands Plaintiff's complaint as asserting the following claims: (1) damages claims against President Trump, in the President's individual capacity, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for violations of Plaintiff's federal constitutional rights; (2) damages claims against the United States of America under the Federal Tort Claims Act; and (3) injunctive- and

[1] Plaintiff commenced this action while incarcerated in the Collins Correctional Facility.

declaratory-relief claims against the United States of America, GSA, and against President Trump, in his official capacity, under the Administrative Procedure Act.

By order dated April 11, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons set forth below, the Court dismisses this action and denies Plaintiff's request to remove from public view and to seal two exhibits attached to the complaint.[3]

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted).

[2] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

[3] After Plaintiff filed his complaint, on May 14, 2025, the court received a letter from Plaintiff requesting that the court "seal and remove from the public docket two exhibits that were inadvertently filed incorrectly in connection with [his] complaint," and to replace those exhibits with other exhibits attached to the letter. (ECF 6, at 1.) Thus, in an abundance of caution, the court requested that the Clerk of Court restrict electronic access to the complaint pending the court's ruling on the abovementioned request.

## BACKGROUND

The following facts are drawn from the complaint[4]: Plaintiff states that he "seeks redress for injuries caused by Executive Order 14173 . . . and subsequent policy changes that removed explicit bans on segregated facilities in federal contracts, reversing decades of civil rights progress." (ECF 1, at 1.) In approximately January 2025, President Trump issued Executive Order 14173, "which revoked multiple Diversity, Equity and Inclusion (DEI) measures." (*Id.* at 2.) Pursuant to that Executive Order, the GSA, in February 2025, "issued a memo that removed a long-standing civil rights clause . . . from all federal contracts." (*Id.* at 2-3.) That ended a previously enforced GSA policy in which the GSA "required federal contractors to affirmatively promise they would not operate segregated facilities (such as separate restrooms, waiting rooms, dining areas, or workplaces based on race, gender, religion, etc.)." (*Id.* at 3.) The GSA "justified this removal by calling it 'duplicative' of existing civil rights law, such as the Civil Rights Act of 1964, and said its removal would 'streamline" federal acquisition regulations." (*Id.*) Plaintiff asserts that, while the abovementioned civil-rights legislation remains in effect, the Executive Order, and the GSA's actions pursuant to that Executive Order, "send[] a message that the government no longer requires desegregation as a condition for federal funding." (*Id.*)

Plaintiff had been a supporter of President Trump's most recent presidential campaign and encouraged Black and Hispanic voters to vote for President Trump. "Plaintiff put his own reputation on the line in advocating for [President] Trump." (*Id.*) Plaintiff, however, views President Trump's issuance of the abovementioned Executive Order as a "direct[] contradict[ion] [of] the promises implied by [President Trump's] campaign and cultural outreach." (*Id.*) He

[4] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise.

states that the issuance of the Executive Order is a "betrayal." (*Id.*) Plaintiff asserts that the changes in federal-government policy brought about by that Executive Order have "deeply affected [him] emotionally, mentally, and culturally. Plaintiff [feels] used, misled, and discarded after defending [President] Trump and helping to influence others in his communities to support" President Trump. (*Id.*) "[T]he institutional rollback of equity programs, in both the public and private sectors, has created a hostile and unequal environment, contributing to civil rights violations against vulnerable groups, including . . . Plaintiff." (*Id.* at 5.)

Plaintiff asks the Court to declare the Executive Order violative of the Constitution and of federal civil rights law. He also asks the Court to issue "a preliminary and permanent injunction reinstating anti-segregation protections in all federal contracts and prohibiting any policy that enables or fails to prevent segregation." (*Id.* at 5.) In addition, Plaintiff seeks damages, costs, attorney's fees, and any other relief the Court deems proper.

## DISCUSSION

### A. Request to remove and seal exhibits

The Court must deny Plaintiff's request to remove from the public docket and seal two of his complaint's exhibits and to replace them with other exhibits. The Court understands this request as one seeking the sealing of exhibits attached to the complaint. The Court denies that request.

Both the common law and the First Amendment protect the public's right of access to court documents.[5] *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-99 (1978); *Hartford*

[5] As to the relevant First Amendment analysis, there are two different approaches. The first is "the so-called 'experience and logic' approach[,] [which] requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question." *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (citations omitted). The United States Court of Appeals for the Second Circuit has noted that "[t]he courts

*Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has set forth a three-part analysis to determine whether, under the common law, a document relating to a lawsuit should be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the Court must determine whether the document at issue is indeed a "judicial document," to which the public has a presumptive right of access. *Id.* at 119. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted).

Second, if the Court determines that the material to be sealed is a judicial document, then the Court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d. 1044, 1049 (2d Cir. 1995).

Finally, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or

---

that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* (citation and internal quotation marks omitted). As to the second approach, courts "consider[] the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (citation and footnote omitted). Here, because the common law right of access requires the Court to deny Plaintiff's request to seal, there is no need to discuss these approaches to First Amendment analysis.

judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotation marks and citation omitted). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such an action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

Pleadings, which include the document that initiates a civil suit (a complaint), *see* Fed. R. Civ. P. 3, 7(a)(1), and its attachments, such as its exhibits, are considered judicial documents for the purpose of this analysis, *see Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016).

Because Plaintiff's complaint is a judicial document, all parts of it, including its exhibits, are entitled to a strong presumption of public access. The exhibits at issue reveal Plaintiff's, and/or some other person's, current or former support for President Trump's 2024 election campaign and Plaintiff's and other Trump supporters' policy disagreements with and disdain for other politicians and candidates for public office. Thus, there does not appear to be countervailing factors that support sealing the exhibits at issue. Accordingly, the Court denies Plaintiff's request to seal two exhibits attached to his complaint. The Court therefore directs the Clerk of Court to lift the restrictions on electronic access to Plaintiff's complaint.

**B. Standing**

The Court must dismiss Plaintiff's claims for lack of standing. "Article III, Section 2, of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-controversy requirement." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997).

To demonstrate standing, a litigant must show that: (1) he has personally suffered some actual or threatened injury as a result of his opponent's alleged illegal conduct; (2) the injury is

fairly traceable to his opponent's conduct; and (3) the injury is likely to be redressed by the requested relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The Supreme Court of the United States has made clear that, as to standing, "the [litigant] must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). In addition, to show standing, the litigant must demonstrate "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant." *Id*. (internal quotation marks and citation omitted). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted). The burden of establishing standing to sue rests with the party bringing the action. *Id.*

Moreover:

> a generalized grievance, no matter how sincere, is insufficient to confer standing. A litigant raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and the laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation omitted). In short, standing requires a litigant to have "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Accordingly, "[s]tanding requires more than just a 'keen interest in the issue.'" *Trump v. Hawaii*, 585 U.S. 667, 697 (2018) (citation omitted).

Plaintiff has alleged nothing to suggest that President Trump's or any part of the Federal Government's actions have directly caused him or will imminently cause him (a New York State prisoner, not a federal prisoner)—as opposed to the public at large—an injury-in-fact as it is described above. The Court, therefore, dismisses Plaintiff's claims for lack of subject matter jurisdiction, because Plaintiff lacks standing to raise them. *See* Fed. R. Civ. P. 12(h)(3); *Mahon*, 683 F.3d at 62.

### C. Leave to amend is denied

Federal district courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), due to lack of standing. The Court also denies Plaintiff's request to remove from public view and seal two exhibits attached to his complaint. (ECF 6.) The Court therefore directs the Clerk of Court to lift the restrictions on electronic public access to Plaintiff's complaint.

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order. While the Court notes that Plaintiff has consented to electronic service of court documents (ECF 4), because he is incarcerated, the Court directs the Clerk of

Court to mail a copy of this order and of the accompanying judgment (with appeal materials) to him at his mailing address of record.

SO ORDERED.

Dated: July 9, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.